# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT DESHIELDS, | : | |
| Plaintiff | : | |
| | : | No. 1:18-cv-1709 |
| v. | : | |
| | : | (Judge Rambo) |
| DR. MICHAEL MOCLOCK, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

## I. BACKGROUND

On July 18, 2018, *pro se* Plaintiff Robert DeShields ("Plaintiff"), an inmate currently housed at the State Correctional Institution, Coal Township, Pennsylvania ("SCI Coal Township"), initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 in the Court of Common Pleas for Northumberland County, Pennsylvania. (Doc. No. 1-2.) Defendants filed a notice of removal on August 28, 2018. (Doc. No. 1.) Defendant Karen Merritt-Scully ("Merritt-Scully") filed an answer to the complaint on September 6, 2018. (Doc. No. 8.) Dr. Michael Moclock ("Dr. Moclock") filed a motion to dismiss (Doc. No. 10) on October 29, 2018.

Plaintiff alleges that on January 4, 2018, he saw Dr. Moclock for peripheral and central vertigo. (Doc. No. 1-2 ¶ 12.) Dr. Moclock examined Plaintiff and noted that he had "a left ear leak which was not consistent with inner ear infection." (*Id.* at 8.) Plaintiff asked to be tested for peripheral and central vertigo, but Dr. Moclock

did not provide such testing, noting that "in most cases these test[s] wouldn't reveal much [due] to the nature of this condition." (*Id.*) Dr. Moclock offered to prescribe Plaintiff Prednisone, but Plaintiff declined "due to [past] treatment failure." (*Id.* at 8, 10.) Dr. Moclock also "agreed to the Epley Maneuver as an effective treatment plan but informed [Plaintiff] that he was not trained in its execution therefore he would not order such treatment." (*Id.*; *see id.* ¶ 12.)

Plaintiff filed a grievance on January 19, 2018, alleging that Dr. Moclock had denied his requests for medical treatment. (*Id.* ¶ 13; *id.* at 8.) As relief, Plaintiff asks that Dr. Moclock be directed to perform the Epley Maneuver and order testing. (*Id.* at 8-9.) Merritt-Scully denied Plaintiff's grievance on February 13, 2018. (*Id.* at 10.)

Plaintiff appealed the denial of his grievance on February 23, 2018. (*Id.* ¶ 15; *id.* at 11-12.) In that appeal, Plaintiff told the Facility Manager that he was suffering from constant headaches, dizziness, an uncomfortable feeling running down to his groin, an uncomfortable feeling in the base of his skull, slurred speech, hearing loss, ringing in one ear, and double vision. (*Id.* ¶ 15; *id.* at 11-12.) Plaintiff claimed to have "[fallen] and collapsed from the pain several times." (*Id.* ¶ 15.) He asked to be seen by a specialist. (*Id.* at 11-12.) On February 27, 2018, the Facility Manager upheld Merritt-Scully's initial response to Plaintiff's grievance. (*Id.* ¶ 18; *id.* at 13.)

On July 3, 2018, the Chief Grievance Officer upheld the previous responses. (*Id.* ¶ 20; *id.* at 16.)

Based on the above allegations, Plaintiff alleges that Defendants violated his rights under the Eighth Amendment to the United States Constitution by not providing treatment for his vertigo. (*Id.* at 5.) He seeks a declaratory judgment that Defendants' actions violated his rights. (*Id.*) Dr. Moclock has filed a brief in support of his motion to dismiss (Doc. No. 11), and Plaintiff has filed an oppositional brief (Doc. No. 12). Accordingly, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d

4

Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B. Civil Rights Statute, 42 U.S.C. § 1983

In order to state a viable claim under § 1983, a plaintiff must plead (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Groman v. Twp. of*

5

*Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990); *Richardson v. Min Sec Cos.*, No. 3:cv-08-1312, 2008 WL 5412866, at *1 (M.D. Pa. Dec. 29, 2008).

### III. DISCUSSION

As noted above, Plaintiff alleges that Dr. Moclock's actions violated his rights under the Eighth Amendment to the United States Constitution. Eighth Amendment claims have both objective and subjective components. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. *Id.* The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *Id.*

The objective component of an Eighth Amendment medical care claim, *i.e.*, whether a plaintiff's medical needs were serious, has its roots in contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1 (1992). A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991); *Monmouth Cty. Corr. Institution Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *West v. Keve*, 571 F.2d 158, 162-63 n.6 (3d Cir. 1978). The serious

6

medical need element contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain. *See Lanzaro*, 834 F.2d at 347.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those [individuals who are] incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In order to establish a claim under § 1983 based on the Eighth Amendment, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004), *Natale v. Camden Cty. Corr. Fac.*, 318 F.3d 575, 582 (3d Cir. 2003); *Farmer*, 511 U.S. at 837. Because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation, nor can disagreements over a prison physician's medical judgment. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990). Thus, this standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Little v. Lycoming Cty.*, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (quoting *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).

A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). For example, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.* at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

Assuming, without deciding, that Plaintiff's medical need was serious in the constitutional sense, the Court concludes that the allegations in Plaintiff's complaint fail to establish an Eighth Amendment claim against Dr. Moclock. As noted above, Plaintiff alleges that he saw Dr. Moclock on January 4, 2018, for peripheral and central vertigo. (Doc. No. 1-2 ¶ 12.) Plaintiff asked for testing, but Dr. Moclock indicated that "in most cases these test[s] wouldn't reveal much [due] to the nature of this condition." (*Id.* at 8.) Dr. Moclock offered to prescribe Prednisone, an option that Plaintiff declined, citing [past] treatment failure." (*Id.* at 8, 10.) Moreover,

8

while Dr. Moclock agreed that the Epley Maneuver could be an effective treatment, he told Plaintiff "that he was not trained in its execution therefore he would not order such treatment." (*Id.*; *see id.* ¶ 12.)

Plaintiff's complaint, as pled, is entirely premised on his disagreement with Dr. Moclock's medical judgment. The complaint explicitly indicates that Dr. Moclock offered treatment—a course of Prednisone—to Plaintiff, and that Plaintiff declined based upon his belief that it would not work due to his experiences with other medications in the past. Moreover, Dr. Moclock decided, using his professional judgment, not to perform the Epley Maneuver because he had not been trained in its execution. Plaintiff's disagreements with Dr. Moclock's medical judgments simply do not suffice to maintain an Eighth Amendment claim against him. *See Durmer*, 991 F.2d at 69; *Lanzaro*, 834 F.2d at 346; *Little*, 912 F. Supp. at 815.

As noted above, in an appeal of his grievance, Plaintiff mentioned that he had been suffering from various ailments, including constant headaches, dizziness, uncomfortable feelings in his groin and the base of his skull, slurred speech, double vision, and hearing loss and ringing in one ear. (Doc. No. 1-2 ¶ 15; *id.* at 11-12.) While not clear, it appears that Plaintiff seeks to hold Dr. Moclock liable for not providing treatment for these symptoms. However, nothing in the complaint

suggests that Dr. Moclock was aware of Plaintiff's symptoms and refused to treat them, or that he even saw Plaintiff after the occasion on January 4, 2018. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (noting that "[a]llegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity"). For these reasons, the Court will grant Dr. Moclock's motion to dismiss Plaintiff's complaint.

## IV. LEAVE TO AMEND

The United States Court of Appeals for the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). "A district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672 (3d Cir. 2014) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Here, with respect to Plaintiff's Eighth Amendment claim against Dr. Moclock, it is neither clear that amendment would be futile, nor is there any basis to believe it would be inequitable. Accordingly, Plaintiff

will be granted leave to file an amended complaint as to his Eighth Amendment claims.

## V. CONCLUSION

For the foregoing reasons, Dr. Moclock's motion to dismiss (Doc. No. 10) will be granted. Plaintiff will be granted leave to file an amended complaint as to his Eighth Amendment claims. An appropriate Order follows.

s/Sylvia H. Rambo  
SYLVIA H. RAMBO  
United States District Judge

Dated: April 9, 2019